UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Robert J. Campbell,
   *Plaintiff,*

V.

Town of Weymouth, et al
   *Defendants*

CIVIL ACTION
NO.05-10620-WGY

## PLAINTIFFS RESPONSE TO SHOW CAUSE ORDER

Now comes the Plaintiff, Robert J. Campbell, ["Campbell"] with the following response to this Court's Memorandum and Order to Show Cause, dated 27 June, 2005, [the "Order"] and a Motion For Leave to Continue Federal Claims discussed in the Plaintiff's [First Amended] Complaint.

As a result of the Plaintiff's Application to Proceed Without Prepayment of the Fees, pursuant to 28 U.S.C §1915, this Court has screened the Plaintiff's First Amended Complaint, and issued the Order to Show Cause, citing various reasons why this action should not be dismissed.

Following in the order listed in the Discussion, the Plaintiff Campbell offers the following response to the issues:

II. The Court May Screen This Action

§1915 authorizes federal courts to dismiss claims if the action lacks an arguable basis either in law or in fact, Nietzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S. §1915(e) (2).

As the Supreme Court found in Nietzke, "A complaint is not automatically frivolous within the meaning of §1915 (d) because it fails to state a claim under [Federal] Rule 12 (b)(6)." 490 U.S. 319, 320, where the more lenient frivolousness standard under §1915 (d) permits dismissal only if a petitioner cannot make any rational argument in law or in fact entitling him to relief. Id. at 323. In deciding Nietzke, the Supreme Court cites Williams v. Faulkner, 837 F.2d 304, (at 307)(1988) (internal quotations omitted), "Unless there is indisputably absent any factual or legal basis for the wrong asserted in the complaint, the trial court, in a close case, should permit the claim to proceed at least to the point where responsive pleadings are required."

Additionally, *in forma pauperis* complaints may be dismissed *sua sponte* and without notice if the claim is based on indisputably meritless legal theory, or factual allegations that are clearly baseless, Id.: Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). In deciding Denton, the Supreme Court held that "…the initial assessment of the….factual allegations must be weighted in the plaintiff's favor" and "…a complaint cannot be dismissed simply because the court finds the allegations to be improbable or unlikely.", Id. 504 U.S. 25, 26 Indeed, the discussion of lower court proceedings in Denton quoted Judge Schroeder's opinion for the Court of Appeals in the Ninth Circuit [ Hernandez v. Denton, 861 U.S. F. 2d 1421 (1988)], which concluded that "…a district court could dismiss a complaint as factually frivolous only if the allegations conflicted with judicially noticeable facts, that is, "facts capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"' Id. at 1426.

Additionally, Campbell's charges of violations of Civil Rights under §1983 and Due Process under the [5th and] 14th Amendments of the Constitution clearly state a claim on

which relief may be granted and will be discussed further in establishing Plaintiff's standing. Campbell's request for monetary relief against a defendant [Town of Weymouth, the "Town"] who is [arguably] immune from such relief [under the 11th amendment] is also a question posed by the Plaintiff for the Court to decide; whether a municipality that engages in deliberate indifference to the official misconduct of elected officials and municipal employees in the development and institution of a municipal policy that is repugnant to [state] law, is liable for the consequential injuries caused by that action.

III. Application to Proceed *In Forma Pauperis*

A. Pertaining to Robert J. Campbell's application for *in forma pauperis* status, which was denied without prejudice in the Order, the Plaintiff humbly submits a new Application to Proceed without Prepayment of Fees, with the attached Affidavit of Financial Standing required by the Court.

B. Regarding The Campbell Family Investment Trust's [the "Trust's"] Application to Proceed *In Forma Pauperis*:

The Plaintiffs do not wish to argue the logic of the Court in finding that the Trust's application to proceed *in forma pauperis* is defective, but rather, respectfully submit the attached Notice of Appearance.

IV. Failure of Trust to Sign Pleadings; A Pro Se Litigant May Not Represent Others

In addition to the aforementioned Notice of Appearance for the Trust, the Plaintiffs humbly submit for docketing and filing, a Second Amended Complaint with the required signature of the Trustee, Francis Campbell, and one notable change from the First Amended Complaint. Robert J. Campbell's request to have his criminal record expunged has been deleted in its' entirety, in accordance with the Order of the Court.

In addition, the Plaintiff Robert J. Campbell humbly apologizes for the erroneous presumption that an unlicensed lay person may represent another litigant and offers two reasons in support of his actions. First, the previous Pro Se action in Massachusetts Land Court on Docket #280041 included both Campbell and his wife, Tammy. Where Massachusetts General Laws allow a Pro Se litigant to represent himself and one other, the subsequent removal of the action to this Court was [erroneously] presumed to be allowed by similar [federal] statute and rules.

Secondly, the intent of Campbell's action in the instant proceedings is to preserve the Plaintiffs rights to remedy and relief under federal statute, Ibid at 21, which necessarily include the interests of the Trust, a real party in interest. Though the timing of Campbell's filings is deserving of additional discussion under Section VI. C., relative to the Statute of Limitations. But with the terror of overstepping the statutory boundaries of §1654, or acting contrary to the Local Rules, the Plaintiff Campbell acknowledges these limitations and insists that any statements, arguments, affidavits or pleadings expressed herein, are applicable only to his claims.

V. The Trust May Not Appear *Pro Se*

After an extensive and exhaustive search for adequate representation the Plaintiff Trust has retained the services of Mr. Edward Clancy, Esq., to represent its interests in this matter. The aforementioned Notice of Appearance is included with this filing, in accordance with Local Rule 83.5.2(a).

V. Plaintiff's Section 1983 Claims

   A. Robert Campbell Lacks Standing to Bring the Complaint Because He Suffered No Actual Injury

The determination of Plaintiff's standing to bring a complaint of deprivation of property rights is not entirely predicated on ownership of the property in question ["locus"], but in whether or not the petitioner has an interest in the property, sufficient to invoke the protections of the due process. Granted, the title to the property in question is deeded to the Trust and Robert J. Campbell is not shown as a co-owner or Trustee of the Trust. But Campbell's interest in locus can be traced to the original Purchase and Sale Agreement signed by both Campbell and his wife Tammy [the "Campbells"] in October, 1995, which included a significant cash deposit as a down payment. In addition to this contractual interest, a subsequent Construction Agreement to build a daycare center on locus was effected between the Campbells and Searles Builders, Inc. ["Searles"] on or about November, 1995, with later revisions. Both of these instruments clearly establish a significant contractual and financial interest in locus, but other evidence also exists to support Campbell's claims.

Searles' applications to the Town of Weymouth for Special Permits and Building Permits were made on behalf of the Campbells and not the Trust, as the entity did not exist at the time the first applications were presented to the Town. Furthermore, when the Special Permit was denied by the Planning Board in March 1997, Searles filed an appeal of that decision in Massachusetts Land Court on Docket #237269 in April 1997, literally days before the sale of locus to the Trust. The Land Court allowed a substitution of Plaintiffs, whereby Searles relinquished any interest in locus and the Campbells were instituted as the Plaintiffs in that action. At no time in the proceedings on Docket #237269 was standing or property ownership brought into question, and the Court assumed the Plaintiffs interests in the Special Permits to be valid. The concept of Res Ipsa Loquitur seems appropriate in this regard, where standing has been previously established, that Campbell has a compelling interest in locus is undeniable.

In Barry v. Barchi, 433 U.S. 55 (1979), the Supreme Court decided on a [14th Amendment] Due Process question pertaining to a harness racing trainer's property interest in his license. Although the circumstances of the cases are inapposite, the analogy to standing is appropriate in this context. Barchi did not own the license in which he had an interest.

With respect to Campbell being an authorized representative of the owner of locus, the Court should consider additional facts not adequately developed in the summary of the complaint. First and foremost, the daycare development project described in the Complaint is a family business venture, and the Trust was established in part, to acquire locus and lease it to the daycare [after it became incorporated]. The building design, site development documents, corporate structure, market analyses, financial projections and operational cost estimates are the intellectual property of Campbell and no other. Indeed, at each public hearing before the Town, Campbell was the authorized representative of the development project before and after title to locus was acquired by the Trust.

Regarding any direct injury resulting from the Defendants actions, Campbell has also shown through the allegations, a substantial economic injury, which includes a brief period of homelessness and the attendant mental and emotional distress, which invariably occur with such traumatic situations. Whether or not it was obvious in the Complaint, Campbell also attributes his initial and subsequent Bankruptcy [Chapter 13] filings either in whole or in part to the Defendants actions.

This case is analogous in some respects to Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252 (1977), where the respondent's standing was in question and the charges involved 14th Amendment Due Process violations. In that case, the respondent Metropolitan Housing Development Corp. ["MHDC"] was found to have "…met the

constitutional standing requirements by showing injury fairly traceable to the petitioner's acts." [precluding any requirement of ownership or title to the property MHDC sought to develop]. In further analogy to the instant case, the Supreme Court held that, "The challenged action of the Village [of Arlington Heights] stands as an absolute barrier to constructing the housing for which MHDC had contracted, a barrier which could be [429 U.S. 252, 253] removed if injunctive relief were granted."

Furthermore the Supreme Court also reasoned that, "It has long been clear that economic injury is not the only kind of injury that can support a plaintiff's [429 U.S. 252, 263] standing." citing United States v. SCRAP, supra, at 686-687; Sierra Club v. Morton 405 U.S. 727, 734 (1972); Data processing Service v. Camp, 397 U.S. 150, 154. Continuing the discussion from MHDC, "Clearly MHDC has met the constitutional requirements, and it therefore has standing to assert its own rights. Foremost among them is MHDC's right to be free of arbitrary or irrational zoning actions." Citing Euclid v. Amber Realty Co. 272 U.S. 365 (1926); Nectow v. city of Cambridge, 277 U.S. 183 (1928); Village of Belle Terre v. Boraas, 416 U.S. 1 (1974).

Here the similarities with the instant case diverge, since the MHDC claims rested on the Equal Protection Clause [of the 14th Amendment] on the grounds of racial discrimination, the only other guidance that can be derived from the decision is relative to the historical context of the zoning proceedings. "The historical background of the [zoning] decision is one evidentiary source, particularly if it reveals a series of official actions taken for invidious purposes." Citing Lane v. Wilson, supra; Griffin v. School board, 377 US. 218, (1964); Davis v. Schnell, 81 F. Supp.872 (SD Ala.), af'd per curiam, 336 U.S. 933 (1949); cf. Keyes v. School Dist. No. 1 Denver, Colo, supra, at 207. The Court further noted that, "Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." Id, at 268.

The Order of this Court requires Campbell to show that his constitutional property rights have been abridged. Notwithstanding the previous discussion, the Court cites facts in the Complaint that are contrary, ie. both time and money were spent to obtain planning and building permits, but notes that ultimately those permits *were granted* (emphasis supplied in Order). The plaintiff argues that even though permits were granted, the Town was also responsible, at least in part, for removing Campbell's ability to proceed on those permits and causing delays which added to the expiration. Campbell contends that *ultimately* (emphasis added), those permits were denied by the Town's imposition of zoning laws that were effectively designed to negate the protected use [given by Massachusetts General Law ["M.G.L."] Chap. 40A, Sec 3], and implemented through deceptive means under the guise of reasonable regulation. The final denial was the effected by the Zoning Board of Appeals decision to deny the variance requested by the Campbells, in violation of the Uniformity requirement of M.G.L. Chap. 40A Sec. 4.

B. <u>Available Adequate State Law Remedies Exist to Rectify Campbell's Procedural Due Process Claim</u>

In interpreting Campbell's claim as procedural due process claim, the Court has found that is not yet ripe for determination, because adequate state law remedies appear to exist to rectify the alleged violations. Citing Hudson v. Palmer 468 U.S. 517, 531-33 (1984); Parratt v. Taylor, 451 U.S. 527, 541 (1981) <u>overruled in part</u>, Daniel;s v. Williams, 474 U.S. 327 (1986), the Court defers to previous rulings that A plaintiff seeking relief regarding land use regulations cannot seek relief in federal court where adequate post-deprivation remedies exist under state law.

In <u>Hudson,</u> [468 U.S. 517] the Supreme Court upheld the decision in <u>Parrat,</u> [451 U.S. 527], equating an intentional deprivation of property with a negligent deprivation of

property, finding in both instances that a post-deprivation remedy at the state level satisfies the requirements for due process. The Plaintiff does not elect to argue the differences between the current circumstances and those in either precedent, at this time, other than to note two substantial deviations. First, unlike Hudson, the Plaintiff's claims against the Town may be barred by sovereign immunity, where a municipality cannot be held liable for civil rights violations under M.G.L. Chap. 258, because it is not considered a "person" in the statutory context.

Secondly, in dissimilar fashion to Parratt, the respondent had not stated a claim for relief under 42 U.S.C. 1983. In that case, the Court held that "In any 1983 action the initial inquiry must focus on whether the two essential elements to a 1983 action are present: (1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." 451 U.S. 527 at 531-535. Plaintiff contends these conditions do exist in this instance.

In studying Williamson Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), the findings are inapposite to the instant case, in that, the respondent Hamilton Bank did not seek the variances that would have allowed it to develop the property. Absent a final administrative decision, the due process claims were not ripe for determination. Campbell contends that he has received a final administrative decision on the proposed use, but defers to the judgment of this Court, that sufficient remedies may be available at the State level.

The First Circuit Court has also held that a §1983 claim is not ripe [for federal review] until the plaintiff has sought remedy under state inverse condemnation law, citing Ocha Realty Corp. v. Faria, 815 F. 2d 812, 816-17 (1st Cir P.R. 1987) ("Since we have held that exhaustion of state law remedies… is a precondition to the maintenance of a federal

damages action under the Takings Clause…we must perforce hold that the district court correctly dismissed the Fifth Amendment claims for money damages as premature."). In Gilbert v. City of Cambridge, 745 F. Supp 42 (D. Mass. 1990), Judge Woodlock concluded, "Mass. Gen. L. ch. 79, § 10 provides a specific stautory remedy for governemental actions which amount to a taking without formal condemnation proceedings." Id. at 52.

C. Statute of Limitations

The Order suggests that Campbell's claims may be time barred in this Court, in view of the three-year statute of limitations on civil rights actions. The Massachusetts statute governing personal injury claims is Mass. Gen. Laws ch. 260, § 2A, providing that actions shall be commenced "within three years next after the cause of action accrues." Federal law controls the determination of when the cause of action accrues, Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994).

Both federal and Massachusetts law agree that a § 1983 claim accrues when a plaintiff knows or has reason to know of his injury. See Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001); Riley v. Presnell, 565 N.E.2d 780, 784, 409 Mass. 239, 243 (1991). Massachusetts begins counting on the day following the day of the incident, with the last day for filing suit being the anniversary date of the event, in accordance with Mass. R. Civ. P. 6(a). See Ciampa v. January, 1992 Mass. App. Div. 204 (1992). We refer to Rule 6(a) as the Massachusetts application rule.

In this regard, the Plaintiff respectfully refers the court to the detailed rendition of factual contentions at Ibid. 144 and 155, which states in pertinent part, that the Board of Zoning Appeal's denial occurred by vote at public hearing on February 6th, 2002, but was not officially rendered until notice was delivered by the Town Clerk in a letter dated March

14, 2002. Plaintiff respectfully suggests that this date is the appropriate time frame for which to consider the applicable tolling. The denial date mentioned in the Order, (December 28, 2001) is the date of Campbell's application for the variance (see Id. at 140), and not the date of the Board of Zoning Appeals' decision. According to the Massachusetts Rule 6 (a), the last possible date for filing a 1983 claim would be calculated as March 14, 2005, coinciding with the Plaintiff's submission.

For additional consideration in this regard, the Plaintiff would like to reiterate that, although he was aware of the multitude of amendments to the Town's Zoning Bylaws, as they occurred, it was not readily apparent on the surface that Defendant members of the Planning Board and the Director of Planning and Community Development had deliberately engaged in deceit and chicanery to effect the changes to the Bylaws in order to circumvent the exemptions provided by M.G.L. Ch 40A, Sec.3. It was not until Plaintiff was engaged in Discovery efforts on Land Court Docket #280041, that evidence of these facts surfaced. The Discovery efforts that led to the full realization of the Plaintiff's cause of action, occurred during the Summer of 2002, which could perceivably extend the statute of limitations.

D. <u>Campbell's Complaint Does Not Show A Substantive Due Process Violation</u>

The Court finds in it's Order that the Plaintiff's allegations of a substantive due process claim are not sufficient to warrant redress, even though specific assertions are made that town officials were malicious and/or not in accordance with state law. Rather than argue the merits of specific allegations, the Plaintiff would like to redirect the Court's attention to the existence of a municipal policy in the Town of Weymouth, that is directly opposed to compliance with M.G.L. Ch. 40A, Sec 3.

That the policy exists is evidenced by the Town's efforts to change local zoning bylaws to circumvent the protections of the protected use for daycare centers; that it was developed and implemented as a direct result of the Plaintiff's application for a Special Permit; that it was necessary for local officials to resort to deception to make arbitrary changes to the zoning bylaws; to directly attempt a change in the statute through sponsored legislation; and furthermore, that this aversion to Ch 40A Sec 3 was included in the draft proposal of zoning bylaws which would govern the redevelopment of the South Weymouth Naval Air Station.

In fact, it took the intervention of a quasi-public agency, The South Shore Tri-Town Devevelopment Corporation and it's independent zoning experts to identify the exemption to Ch 40A Sec 3, as an inappropriate element of the proposal. The offensive language was included in the first draft of the proposal in 1998 and removed from the final version just prior to a vote in May, 2005. Were it not for this intervention, the base redevelopment would have been in jeopardy.

## VII. Plaintiff's Other Civil Rights Claims

### A. and B. Plaintiffs Section 1985 & 1986 Claims

Plaintiff defers discussion on these issues pending resolution of the state civil rights claims, but seeks to retain the right to introduce a more detailed allegation at a later date.

## VIII. Regarding Plaintiff's Criminal Record

In accordance with the Order to dismiss this charge, the Plaintiff has removed the request from the Second Amended Complaint.

## IX. State Law Based Claims

The Plaintiff hereby motions for leave to proceed with the land use and civil rights claims in the Massachusetts State Land Court on Docket # 280041, and prays the Court allow the federal questions be allowed to continue pending resolution of the land use questions.

Respectfully submitted,

Robert J. Campbell

Plaintiff, Pro Se
50 Squanto Road
North Weymouth, MA 02191
Telephone (781) 335-4362

Dated August 1, 2005