UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10620-WGY

| | |
|---|---|
| ROBERT J. CAMPBELL, et al. | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| TOWN OF WEYMOUTH, et al. | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS TOWN OF WEYMOUTH, DILLON, RYAN, ABBOTT, LYNCH, CLARKE, COATES, MCELROY, O'BRIEN, FOLEY, JOYCE, ELKERTON, NASUTI and RYAN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Defendants Town of Weymouth, Paul Dillon, Mary Sue Ryan, Susan Abbott, Paul Lynch, James Clarke, Jeffrey Coates, Mary McElroy, Francis O'Brien, Edward Foley, Martin Joyce, Stanley Elkerton, Michael Nasuti and William Ryan have moved the Court to dismiss the Second Amended Complaint against them because none of the claims asserted state a claim against these Defendants upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In support of their motion, the Defendants state that the Second Amended Complaint alleges only conduct which occurred, if at all, more than three (3) years before the Plaintiff filed suit on March 14, 2005. Accordingly, the Plaintiff's claims are barred by the applicable three (3) year statute of limitations.

In response to the Court's June 27, 2005 Memorandum and Order requiring that the Plaintiff show cause why the action should not be dismissed for failure to state a claim and/or to show standing ("show cause order") the Plaintiff argued, among other things, that his action is not time barred because the Weymouth Board of Zoning Appeals's ("BZA") written report of its February

2, 2002 vote to deny the Plaintiff's request for variance was filed with the Town Clerk on March 14, 2002, and that the limitations period did not begin to run until March 14, 2002. The Plaintiff concedes, as he must, that he was present for the vote taken by the BZA on February 6, 2002 to deny his request for variance. The Plaintiff advanced no argument as to why his claims against defendants other than Weymouth and the BZA members (McElroy, O'Brien, Foley, Joyce, Elkerton) are not time barred. The Plaintiff's cause of action accrued, if at all, on February 6, 2002 when he knew or should have known of the BZA's vote to deny his request for variance.

Even if the Plaintiff's lawsuit was not time barred, his allegation of deprivation by reason of the BZA's vote to deny his request for variance cannot support liability under 42 U.S.C., § 1983 based on an alleged deprivation of due process. The Plaintiff had no protected property interest in the variance which he sought.

To the extent that the Plaintiff's claim is not time barred, which the Defendants deny, the Plaintiff cannot prevail under § 1983 based on an alleged deprivation of procedural due process because there existed an adequate post deprivation remedy under state law for the alleged deprivation of the Plaintiff's procedural due process rights. The Plaintiff has already resorted to one potential avenue under state law by his petition for judicial appeal of the denial of his request for variance in the Massachusetts Land Court. The Plaintiff has not availed himself of a claim under General Laws chapter 79, § 10, which may also provides an adequate post deprivation remedy under state law if a remedy is warranted.

The Plaintiff's allegations concerning Nasuti's alleged increased presence in his neighborhood do not support a claim under § 1983 because the Plaintiff has not alleged a deprivation of any clearly established, federally protected right. See 42 U.S.C., § 1983.

2

The Court should dismiss the Plaintiff's claims under 42 U.S.C., §§ 1985 and 1986 because neither count states a viable claim as pled.

The Second Amended Complaint does not allege a municipal custom, policy or practice of Weymouth which was a substantial motivating factor of any alleged deprivation of rights.

### RELEVANT ALLEGATIONS, FACTS AND PROCEEDINGS.

The Second Amended Complaint ("Complaint") alleges that Weymouth and certain of its employees are liable for a series of alleged events beginning after the Plaintiff's purchase of two lots in Weymouth in October 1995. Complaint, para. 23. The Plaintiff intended to build a residence on a lot at 9 Davids Island Road, and to build a childcare facility on a lot at 311 Neck Street. Complaint, paras. 22, 24. Both lots were within a district zoned Residential R-1, and within a flood plain overlay district classified by FEMA as a flood hazard zone A4. Complaint, para. 27. The Plaintiff sought and obtained a special permit for construction of the residence from the Weymouth Planning Board in or around June 1996. Complaint, para. 30.

The Plaintiff's applied for a special permit to allow for construction on the Neck Street property, but his permit was by the Plaintiff's own admission, substantially flawed. Complaint, para. 31. The Plaintiff was allowed to withdraw his application from the Planning Board's consideration on or about May 28, 1996. Id.

The Plaintiff alleges that from May 1996 to January 1997, the Weymouth Planning Board discussed and proposed changes to zoning bylaws which increased minimum lot size and width in R-1 zoned areas, increased parking space requirements for all commercial establishments and imposed parking space requirements on day care centers. Complaint, para. 43. These proposed zoning changes were allegedly implemented at Town Meeting in January 1997, and modified at

Town Meeting in May 1997. Complaint, para. 44. The Plaintiff was aware of these zoning changes in 1996 and 1997 and allegedly attempted to modify his plans for his proposed childcare facility to comply with the bylaws. Complaint, para. 45.

The Plaintiff alleges that during public hearings concerning his proposed childcare facility in 1996 and early 1997, certain Planning Board members commented on his proposal or asked questions which the Plaintiff claims indicated that they were not favorably disposed toward his project. Complaint, paras. 46-49, 56-58. At a public hearing on February 24, 1997 the Planning Board voted to deny the Plaintiff's application for special permit. Complaint, para. 67. The Plaintiff appealed this disposition to the Massachusetts Land Court in March 1997. Complaint, para. 68.

The Plaintiff alleges that the Planning Board proposed additional zoning changes concerning parking requirements, which were implemented at Town Meeting in January 1998, and modified at Town Meeting in May 1998. Complaint, paras. 80-81. The Plaintiff now objects to these zoning changes, but evidently took no action at or around the time of their passage to challenge their constitutionality.

During or before September 1998, see Complaint, paras. 87 and 93, the Plaintiff alleges that the Weymouth Board of Selectmen revised the application procedure for a Business Certificate to impose requirements for a "Criminal Offense Records Investigation (CORI)." Complaint, paras. 87-88. This requirement allegedly posed difficulty for the Plaintiff due to his several prior arrests. Complaint, p. 7, fn. 1. The Plaintiff contends that this change "was a preemptive move to enable the Town to deny the Plaintiff's proposed childcare facility in the event that the Plaintiff prevailed on his appeal of denial of his application for special permit." Complaint, para. 90.

The Plaintiff alleges that in September 1998, the Land Court found in his favor on the appeal

4

of the Planning Board's denial of his application for special permit, and remanded the case to the Planning Board. Complaint, para. 93. The Planning Board issued a special permit to the Plaintiff in November 1998. Complaint, para. 94.

The Plaintiff decided to sell the lot at 9 Davids Road in November 1998. Complaint, para. 96. The Plaintiff had not constructed a residence at that location as of October 2000. See Complaint, para. 105.

The Plaintiff alleges that in September 1999, he sought permission from the Weymouth Building Inspector to place a temporary mobile home on the lot at 9 Davids Road until a house could be built. Complaint, para. 103. On October 1, 1999, the Building Inspector denied the Plaintiff's request because the lot is in the "100 year Special Flood Hazard Zone A4, and as such will require a Special Permit," but concurrently granted the Plaintiff a 90-day extension of the Special Permit issued in June 1996 through December 29, 1999 to build a house on that lot. Complaint, paras. 104-105. The Plaintiff did not build a house on this lot. Complaint, para. 123.

The Plaintiff alleges that from December 2000 through April 2001, employees of the Weymouth Building Department misled "prospective buyers" of the lot at 9 Davids Street by telling them that the lot was too small to build on. Complaint, paras. 126-129. The Plaintiff was aware of this alleged problem in and before May 2001 and allegedly rectified the situation with the Building Department in May 2001. Complaint, paras. 131-132, 135.

In November 2000, the Plaintiff filed an application for building permit for the proposed childcare facility because the special permit issued by the Planning Board in 1998 was "due to expire." Complaint, para. 124. The Plaintiff let this special permit lapse, and thus had to reapply to the Board of Zoning Appeals for a special permit on December 28, 2001 under the more restrictive

5

zoning bylaws in effect at that time.  See Complaint, paras. 134, 140-141.

The Plaintiff was present and participated in a public hearing before the Board of Zoning Appeals on February 6, 2002 at which he argued in support of his application for a special permit and variance to permit construction of the proposed childcare facility.  Complaint, para. 142.  The Plaintiff was present at this hearing to hear comments allegedly made by Defendants Nasuti, Dillon, Clarke and the members of the BZA at that hearing.  See Complaint, paras. 145-149.  The Plaintiff was present to see and hear the BZA members vote to deny his request for variance to the minimum parking space requirements, but approve his application for a special permit to build with the flood plain. See Complaint, para. 144.  The Plaintiff alleges that the "official  decision" of the BZA was issued in a notice dated March 14, 2002.  See Complaint, para. 155.  The Plaintiff appealed the BZA's denial of his request for variance to the Massachusetts Land Court. Id.

The Plaintiff alleges that on August 19, 2004, he filed affidavits in support of a motion filed in his state court appeal of the BZA's decision which specifically mention Nasuti.  See Complaint paras. 178-179.  The Plaintiff alleges that since he filed the affidavits, Nasuti "has increased his presence in the Plaintiffs neighborhood with almost daily appearances in {either} his official capacity and {/or} by cultivating a personal relationship with the Plaintiffs neighbors."  Complaint, para. 179.

The Plaintiff filed the present lawsuit on March 14, 2005.

## ARGUMENT

A.    THE APPLICABLE LEGAL STANDARD FOR A MOTION TO DISMISS

Rule 12 (b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which "fail to state a claim upon which relief may be granted."  See Fed.R.Civ.P. 12 (b)(6).  A

motion to dismiss under Rule 12 (b)(6) tests the sufficiency of the pleadings. "When confronted with a motion to dismiss the court accepts as true all well-pleaded factual averments and draws all reasonable inference in the plaintiff's favor." <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir.1989). However, the court need not accept a complaint's "bald assertions or legal conclusions" when assessing a motion to dismiss. See <u>Abbott III v. United States</u>, 144 F.3d 1, 2 (1st Cir.1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." <u>Romero-Barcelo v. Hernandez-Agosto</u>, 75 F.3d 23, 28, n. 2 (1st Cir.1996). Dismissal is appropriate under Rule 12 (b)(6) of the Federal Rules of Civil Procedure if the complaint presents no set of facts justifying discovery. <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).

B.    <u>THE PLAINTIFF'S CLAIMS UNDER 42 U.S.C., § 1983 ARE TIME BARRED</u>.

The Court should dismiss the Plaintiff's claims against the Town of Weymouth, Dillon, Ryan, Abbott, Lynch, Clarke, Coates, McElroy, O'Brien, Foley, Joyce, Elkerton, Nasuti and Ryan because none of the Plaintiff's claims against these Defendants was filed within the applicable three (3) year limitations period. As alleged in the Complaint, all of the conduct of which the Plaintiff complains occurred, if at all, prior to March 14, 2002. The Complaint demonstrates that the Plaintiff was aware or reasonably should have been aware of the Defendants alleged misconduct prior to March 14, 2002. The Plaintiff has not stated a claim against the Defendants upon which relief can be granted.

Although there is no specified Statue of Limitations for causes of action brought under federal civil rights laws, it is well settled that the applicable state Statute of Limitations is applied where the action is filed. Thus, in federal civil rights cases filed in Massachusetts, the applicable

statute of limitations is three years. <u>Nieves v. McSweeney</u>, 241 F.3d 46, 52 - 53 (1st Cir. 2001) (§ 1983); <u>Johnson v. Rodriquez</u>, 943 F. 2d 104, 107 (1st Cir. 1991) (§ 1981); <u>Govan v. Trustees of Boston Univ.</u>, 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (§§ 1981, 1985). <u>See also Owens v. Okure</u>, 488 U.S. 235 (1989); <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985); <u>Street v. Vose</u>, 936 F.2d 38, 39 (1st Cir. 1991) (per curiam) (the Massachusetts three-year statute of limitations applies to § 1983 actions).

The First Circuit recognizes that "[a]lthough state law determines the tolling provisions of the applicable statute, it is federal law that determines when these constitutional claims accrue." <u>Perez-Ruiz v. Crespo-Guillen</u>, 847 F. Supp. 1, 2 (D. Puerto Rico 1993) *aff'd* 25 F.3d 40 (1st Cir. 1994) citing <u>Edwards v. Sotomayor</u>, 557 F. Supp. 209, 213 (D. P.R. 1983) citing <u>Walden III Inc. v. Rhode Island. 576 F.2d 945 (1st Cir. 1978); Singleton v. N.Y.</u>, 632 F.2d 185, 191 (2nd Cir.1980). A section1983 cause of action accrues when the plaintiff knows, or has reason to know, of the injury which is the basis of the action; when facts supportive of a civil rights action are obvious, or should be obvious, to a reasonably prudent person similarly situated. <u>Edwards</u>, 557 F. Supp. at 214; <u>Carreras-Rosa</u> 127 F.3d 172, 174 (1st Cir. 1997).

    1.    The Complaint Alleges No Conduct Of Defendants Dillon, Ryan, Abbott, Lynch, Clarke, Coates, McElroy And Ryan On Or After March 14, 2002 <u>Which Can Support Liability Under 42 U.S.C, § 1983.</u>

The Court should dismiss the Plaintiff's claims against Defendants Dillon, Ryan, Abbott, Lynch, Clarke, Coates and Ryan because the Complaint alleges no wrongdoing by any of these persons during the three (3) years before the Plaintiff filed suit. The allegations of the Complaint likewise make manifest that the Plaintiff knew or should have known of the Defendants' alleged misconduct at the time of its alleged occurrence, or in any event, before March 14, 2002. Accordingly, the Court should dismiss all of the claims asserted against these Defendants in the

Second Amended Complaint.

The Complaint alleges that Defendant Paul Dillon is a member and Chairman of the Planning Board. The Complaint alleges that Dillon (1) was a member of a Planning Board that discussed and proposed revisions to the zoning bylaws to increased lot size an imposed parking space requirements on commercial establishments in January 1997 and May 1997 [Complaint, paras. 42-44]; (2) participated in Planning Board public hearings on the Plaintiff's application for special permit held between December 1996 and February 1997 where he considered issues beyond the scope of the matter to be decided, "allowed" Board members to ask irrelevant questions, and commented negatively on the project which the Plaintiff had proposed [Complaint, paras. 45-49]; (3) voted to deny the Plaintiff's application for special permit on February 24, 1997 [Complaint, para. 67]; (4) participated as a Planning Board member in proposing bylaw changes to parking space requirements for presentation at Town Meeting in January 1998 and May 1998, allegedly stating a false rationale for the proposed changes [Complaint, paras. 80-44]; and (5) spoke at a February 6, 2002 public hearing of the Board of Zoning Appeals in opposition to the Plaintiff's application for special permit [Complaint, paras. 145, 151-152]. The Complaint alleges no wrongdoing by Dillon after February 6, 2002.

The Complaint alleges that Defendants Mary Sue Ryan, Susan Abbott, Paul Lynch and Mary McElroy were members of the Weymouth Planning Board. The Complaint alleges specifically that Ryan, Abbott, Lynch and McElroy (1) were members of a Planning Board that discussed and proposed revisions to the zoning bylaws to increase lot size and impose parking space requirements in January 1997 and May 1997 [Complaint, paras. 42-44]; (2) participated in Planning Board hearings on the Plaintiff's project held between December 1996 and February 1997 in which they

considered issues beyond the scope of the matter to be decided, introduced allegedly improper testimony or commentary, asked irrelevant questions, and commented negatively on the Plaintiff's project [Complaint, paras. 45-49]; (3) participated as members of the Planning Board in proposing bylaw changes to parking space requirements for presentation at Town Meeting in January 1998 and May 1998, allegedly stating a false rationale for the proposed changes [Complaint, paras. 80-44]; and (4) voted to deny the Plaintiff's application for special permit on February 24, 1997 [Complaint, para. 67]. The Complaint alleges no wrongdoing by Ryan, Abbott, Lynch and McElroy after February 6, 2002.

The Complaint alleges that Defendant James Clarke is Weymouth's Director of Community Development. The Complaint alleges specifically that Clarke (1) joined with members of the Planning Board in 1998 in deliberately stating or suggesting falsely, in a cover letter to proposed changes to Weymouth's zoning bylaw, that since the 1997 Annual Town Meeting "the Planning Board has reviewed new applications for daycare centers, especially in single family districts" [Complaint, paras. 82-83]; and (2) reading "comments solicited from the Weymouth Police Department on the proposed project" at the February 6, 2002 meeting of the BZA [Complaint, para. 147]. The Complaint alleges no wrongdoing by Clarke after February 6, 2002.

The Complaint alleges that Defendant Jeffrey Coates is Weymouth's Director of Municipal Licenses and Liens and its Building Inspector. The Complaint alleges specifically that Coates (1) refused to issue building permits in February 1996 because special permits were required [Complaint, para. 27]; (2) denied the Plaintiff's request in October 1999 to put a temporary mobile home on a lot within the "100 year special flood hazard zone A4 without a special permit" [Complaint, para. 104]; (3) headed a Building Department whose employees misrepresented to

10

potential buyers that the Plaintiff's lot was too small to build on between December 2000 and April 2001, which conduct was discovered and rectified by the Plaintiff in or before May 2001 [Complaint, para. 126-135].  The Complaint alleges no wrongdoing by Coates after May 2001.

The Complaint alleges that Defendant William Ryan is the former Chairman of Weymouth's Board of Selectmen. The Complaint alleges that Ryan was a member of a Board of Selectmen which took action during or before September 1998 to revise Weymouth's application procedure for a Business Certificate to include a CORI check, with knowledge that the Plaintiff had been the subject of prior arrests, with the intent and purpose to deny the Plaintiff's project [Complaint, paras. 86-91, 93].  The Complaint alleges no wrongdoing by Ryan after September 1998.

2.    The Complaint Alleges No Act Or Failure To Act By Defendants O'Brien, Foley, Joyce, Elkerton And Weymouth After February 6, 2002 Upon Which Liability Can Be Premised.

The Court should dismiss the Plaintiff's claims against Defendants O'Brien, Foley, Joyce, Elkerton and Weymouth because the Complaint does not allege any act or omission by any of these Defendants on or after March 14, 2002 which deprived the Plaintiff of any federally protected right. The last act of the BZA member Defendants, if any, which the Plaintiff can colorably argue caused a deprivation of his federal civil rights was the alleged conduct of certain Defendants at the February 6, 2002 hearing on the Plaintiff's application for special permit and request for variance.  The Plaintiff was present and participated at this hearing which culminated with a vote by the BZA in open session to deny the Plaintiff's request for variance.  Since the Plaintiff was present at the hearing and was present when the BZA voted to deny his request for variance, the Plaintiff was aware on February 6, 2002 of the facts upon which he bases his claims against the BZA member Defendants.  The Plaintiff's March 14, 2005 Complaint is untimely and is time barred.

The Complaint alleges that at a public hearing on the Plaintiff's application for special permit and variance from Weymouth zoning bylaws to which the Plaintiff's lot did not conform, "the Defendant members of the BZA ignored the (Plaintiff's arguments concerning the) hardship imposed by the geometry of the lot, neglected to address the circular driveway in the front setback and insisted that reducing the size of the building would accommodate all of the existing parking requirements." Complaint, para. 143. The vote occurred on February 6, 2002. The Complaint alleges no wrongdoing by O'Brien, Foley, Joyce and Elkerton or Weymouth after February 6, 2002.

The Plaintiff contends that the limitations period for his claims against the BZA member Defendants did not begin to run on the date of the vote to deny him relief, but rather began to run five (5) weeks later on March 14, 2002, the date written notice of the vote was filed with the Weymouth Town Clerk. The Plaintiff's response to the Court's show cause order cites no authority for this position. A §1983 cause of action accrues when the Plaintiff knows, or has reason to know, of the injury which is the basis of the action; when facts supportive of a civil rights action are obvious, or should be obvious, to a reasonably prudent person similarly situated. Edwards, 557 F. Supp. at 214; Carreras-Rosa 127 F.3d at 174 (1st Cir. 1997). The Plaintiff was present at the BZA meeting to make argument in support of his application, and was present to hear and know of the vote taken by the BZA members to deny his request for variance on February 6, 2002. To the extent that the Plaintiff claims that the BZA vote deprived him of his federally protected civil rights, any facts which the Plaintiff might contend support of his civil rights claims were obvious and known to him, or at the least, should have been obvious to a reasonably prudent person similarly situated no later than February 6, 2002. The Plaintiff's civil rights claim against the Defendant ZBA members and Weymouth are untimely and are time barred.

12

3.    The Complaint Alleges No Act Or Failure To Act By Defendant Nasuti After February 6, 2002 Upon Which Liability For Violation Of The Civil Rights <u>Law Can Be Premised</u>.

The Complaint alleges that Defendant Michael Nasuti is a Weymouth police officer who participated as a Weymouth citizen in opposition to the Plaintiff's several attempts to obtain special permits and/or a variance to enable him to construct the proposed childcare facility. Allegations in the Complaint specific to Nasuti can logically be broken down into (1) Nasuti's alleged conduct at or before the February 6, 2002 BZA hearing; and (2) Nasuti's alleged increased presence in the Plaintiff's neighborhood after the Plaintiff filed affidavits referring to Nasuti in his Land Court appeal. To the extent that the Plaintiff alleges deprivation of his federally protected civil rights by Nasuti for conduct that precedes March 14, 2002, the Plaintiff's claim is untimely and time barred.

C.    THE COMPLAINT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THE PLAINTIFF HAS NOT ALLEGED A DEPRIVATION OF <u>DUE PROCESS WHICH CAN SUPPORT LIABILITY</u>.

The Complaint does not state a claim upon which relief can be granted because the Plaintiff had no federally protected property interest in the variance which the BZA member Defendants voted to deny. Moreover, even if the Plaintiff could prove that he has been deprived of due process by an arbitrary and capricious act of the BZA member Defendants, which the Defendants emphatically deny, the availability of an adequate post deprivation remedy under state law by way of an appeal under Massachusetts General Laws ch. 40A precludes liability under 42 U.S.C., § 1983 for a purported deprivation of procedural due process.[1]

---

[1]The Plaintiff is, in fact, pursuing such an appeal presently in the Massachusetts Land Court, <u>Campbell, et al. v. Town of Weymouth, et al.</u>, Case No. 280041.

13

1.    The Plaintiff's § 1983 Claim Based On An Alleged Deprivation Of Due Process
      Must Fail Because He Has No Protected Interest In The Variance He Sought.

The Complaint does not state a claim upon which relief can be granted to the extent that it

purports to state a claim under § 1983 for alleged deprivation of due process because the Plaintiff

has not pled nor can he prove that he had a protected property interest in the variance which he

claims was wrongly denied him.  Accordingly, the Court should dismiss the Complaint.

A party alleging deprivation of procedural due process in support of a "claim under §1983

must allege first that it has a property interest as defined by state law and, second, that the

defendants, acting under the color of state law, deprived it of that property interest without

constitutionally adequate process."  PFZ Properties, Inc., v. Rodriguez, et al., 928 F.2d 28 (1st Cir.,

1991).  Federal courts have consistently rejected claimants' attempts to use civil claims under § 1983

as a means of review of actions taken by local zoning or licensing authorities.  See  Chiplin

Enterprises, Inc. v. City of Lebanon, et al., 712 F.2d 1524 (1st Cir. 1983); Raskeiwicz v. Town of

New Boston, 754 F.2d 38 (1st Cir. 1985); Creative Environments, Inc. v. Estabrook, 680 F.2d 822

(1st Cir.) cert denied 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).  The First Circuit Court

of Appeals has stated unequivocally "federal courts do not sit as a super zoning board or a zoning

board of appeals."  Raskiewicz, 754 F.2d at 44.

Even if the issuing authority does not obey state law this does not necessarily give rise to a

constitutional claim. Chiplin Enterprises, Inc., 712 F.2d at 1527, citing Paul v. Davis, 424 U.S.

693,96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  A claim that denial of a permit or variance "was

improperly motivated, unsupported by an allegation of the deprivation of a specific constitutional

right, simply raises a matter of local concern, properly and fully reviewable in the state courts." Id.

The Plaintiff seeks, by his Complaint, to obtain a federal court review of a state law zoning issue by couching his zoning appeal as a federal civil rights claim. The Plaintiff's intent in this respect is made clear by the allegations in paragraph 143 of the Complaint in which the Plaintiff alleges that "the Defendant members of the BZA ignored the (Plaintiff's arguments concerning the) hardship imposed by the geometry of the lot, neglected to address the circular driveway in the front setback and insisted that reducing the size of the building would accommodate all of the existing parking requirements." Complaint, para. 143. Notably, the Plaintiff is engaged in a state court appeal of the BZA's decision pending concurrently with this lawsuit. The Defendants respectfully move the Court to reject the Plaintiff's attempt to use his civil claim under § 1983 as a means of review of actions taken by Weymouth BZA, and move the Court to dismiss the Complaint. See Chiplin Enterprises, Inc. v. City of Lebanon, et al., 712 F.2d 1524; Raskeiwicz, 754 F.2d 38; Creative Environments, Inc., 680 F.2d 822 .

2.      To The Extent That The Plaintiff Purports To Allege A § 1983 Claim Based On A Deprivation Of Procedural Due Process, His Claim Must Fail Because He Has An Adequate Post Deprivation Remedy Under State Law.

Where a Complaint alleging liability under § 1983 based on an alleged deprivation of procedural due process does not allege the unavailability of adequate state remedy, the Complaint is subject to dismissal. Smith v. Massachusetts Dept. Of Correction, 936 F.2d 1390, 1402 (1st Cir. 1991). Such is the case with the Plaintiff's Complaint.

To the extent that Campbell's claim is interpreted as a procedural due process claim, it is not yet ripe for determination in this Court, because adequate state law remedies exist to rectify his alleged violations. A plaintiff seeking relief regarding land use regulations cannot seek relief in federal court where adequate post-deprivation remedies exist under state law. See Hudson v. Palmer,

468 U.S. 517, 531-33 (1984); Parratt v. Taylor, 451 U.S. 527, 541, 101 S. Ct. 1908 (1981) overruled

in part, Daniels v. Williams, 474 U.S. 327 (1986).

It is well settled in the First Circuit that a procedural due process claim is not actionable

unless the claimant can show that there is no adequate 'post-deprivation remedy' is available under

state law." Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996); See Parratt v. Taylor, 451

U.S. 527, 101 S. Ct. 1908 (1981);.  This tenet, known as the "Parratt-Hudson doctrine," has been

summarized by the First Circuit as follows:

> When a deprivation of a property interest is occasioned by random and unauthorized conduct
> by state officials, . . . the [Supreme] Court has repeatedly emphasized that the due process
> inquiry is limited to the issue of the adequacy of post-deprivation remedies provided by the
> state.

Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992). Thus, if a state provides adequate post-

deprivation remedies -- either by statute or through the common-law tort remedies available in its

courts -- no claim of a violation of procedural due process can be brought under § 1983 against the

state officials whose random and unauthorized conduct caused the deprivation.  Lowe, 959 F.2d at

340-41; Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994).  There is "no denial of

procedural due process, even by the official," where the prerequisites of random and unauthorized

conduct and adequate post-deprivation remedies are met. O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir.

2000) quoting Herwins v. City of Revere, 163 F.3d 15 (1st Cir. 1998).

In the present case, the Plaintiff has available an adequate post deprivation remedy under

state law by way of a judicial review of the BZA's decision under Massachusetts General Laws

chapter 40A.  The Plaintiff is presently pursuing this remedy in the Massachusetts Land Court.  Since

the Plaintiff has an adequate post deprivation remedy for the alleged deprivation of procedural due

process, his Complaint does not state a claim upon which relief can be granted.

Additionally, the Plaintiff may have another adequate post deprivation remedy if his Complaint is construed as a claim for inverse condemnation.  If the Plaintiff makes such a claim, he may seek redress in the state courts of Massachusetts under a claim for inverse condemnation and his procedural due process rights are adequately protected by state law. See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-87 (1985) (holding that where plaintiff had failed to seek relief in Tennessee state court regarding zoning laws, the cause of action was not ripe for federal judicial determination.); See Ocha Realty Corp. v. Faria, 815 F.2d 812, 816-17 (1st Cir. (Puerto Rico) 1987) ("Since we have held that exhaustion of state law remedies... is a precondition to the maintenance of a federal damages action under the Takings Clause ... we must perforce hold that the district court correctly dismissed the Fifth Amendment claims for money damages as premature.").  The First Circuit determined that even though Puerto Rico did not have a specific inverse condemnation statute, the judiciary had allowed causes of action and therefore the plaintiff had a remedy under state law. See Id.  The Commonwealth of Massachusetts explicitly provides a remedy for inverse condemnation.  See M.G.L. c. 79 § 10.

Since the Plaintiff has an adequate post deprivation remedy for any purported deprivation of procedural due process, the Court should dismiss the Complaint.

3.    To The Extent That The Plaintiff Purports To Allege A § 1983 Claim Based On An Alleged Deprivation Of Substantive Due Process, His Claim Must Fail.

A substantive due process claim differs from a procedural due process claim because it "implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural

17

swaddling, was in itself impermissible." Amsden v. Moran, 904 F.2d 748, 753 (D. N.H. 1990). For a claim of violation of substantive due process the plaintiff must show that the "state action *in and of itself* [is] egregiously unacceptable, outrageous, or conscience shocking." Id. at 754.

The First Circuit has held that a plaintiff's claims charging zoning officials with improper refusal of a subdivision plan did not rise "to the level of a violation of the Constitution of the United States." Creative Environments. Inc., 680 F.2d at 829. In that case, the plaintiffs claimed that the town laws were a "'distortion of the existing [state] statutory and regulatory scheme, '" and thus violated their substantive due process rights. Id. at 831. The Court rejected this argument, finding that: [W]ere such a theory to be accepted, any hope of maintaining a meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned. Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach. Id. See Chiplin Enterprises. Inc., 712 F.2d at 1527 ("The claim that denial of the permit was improperly motivated, unsupported by an allegation of the deprivation of a specific constitutional right, simply raises a matter of local concern, properly and fully reviewable [sic] in the state courts."). Campbell's contentions of improper motives by the Defendants are insufficient to warrant redress. The Court should dismiss the Complaint.

D.    THE COMPLAINT DOES NOT ALLEGE CONDUCT BY NASUTI SUFFICIENT TO STATE A CLAIM UNDER § 1983 UPON WHICH RELIEF CAN BE GRANTED.

Section 1983 does not create any substantive rights, but rather provides a vehicle for the protection and vindication of rights secured by the United States Constitution or by federal law.

18

Baker v. McCollan, 443 U.S. 137, 146 n.3 (1979); Boveri v. Town of Saugus, 113 F.3d 4, 6 (1st Cir. 1997).  The plaintiff in a civil rights action under §1983 must prove, by a preponderance of the evidence, that a person acting under color of state law deprived her of a constitutional or federally-protected right.  42 U.S.C. § 1983; Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994).

The Complaint alleges no conduct of Nasuti which can amount to a deprivation that can support liability under § 1983.  The allegation that Nasuti has been in his neighborhood with increased frequency does not allege a deprivation of any federally protected right and so the Court should dismiss the Complaint.

E.    THE COURT SHOULD DISMISS THE PLAINTIFF'S CLAIM UNDER § 1985.

The Court should dismiss the Plaintiff's claim under 42 U.S.C., § 1985 because the Complaint does not allege sufficient facts to state a claim upon which relief can be granted.  As the Court observed in its show cause order, there are no facts or circumstances which would suggest that §§ 1985(1) and 1985(3) might apply to the Plaintiff's situation.  Under § 1985(2), Campbell must plead a conspiracy between Town officials to impede, hinder, or obstruct justice, and that the Defendants did so with the intent to deny equal protection to Campbell, or to injure Campbell's person or property in retaliation for Campbell's enforcing his equal protection rights.  See 42 U.S.C. § 1985(2).  Even given a chance to amend his Complaint in a fashion which would provide notice of the substance his claim under § 1985, the Plaintiff failed or declined to do so.  As the Complaint does not allege a viable claim under § 1985, the Defendants move the Court to dismiss the Plaintiffs claims under §§ 1985 and 1986.

## CONCLUSION

For all of the above stated reasons, these Defendants respectfully move the Court to dismiss the Second  Amended Complaint.

Respectfully submitted,

Defendants,
TOWN OF WEYMOUTH, PAUL M. DILLON, MARY SUE RYAN, SUSAN ABBOTT, PAUL F. LYNCH, JAMES CLARKE, JEFFREY R. COATES, MARY S. MCELROY, FRANCIS O'BRIEN, EDWARD FOLEY, MARTIN JOYCE, STANLEY ELKERTON, MICHAEL NASUTI and WILLIAM RYAN,
By their attorney,

/s/ William P. Breen, Jr.
William P. Breen, Jr., Esq. BBO # 558768
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

Dated: February 26, 2006

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 27, 2006.

/s/ William P. Breen, Jr.

20